JOSEPH MARCUS *et al. vs.* THE GREAT AMERICAN TEA COMPANY.

JULY 8, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J. This is an action of covenant, on a lease under seal from the plaintiffs to the defendant, to recover rent for the month of March 1935, at the stipulated rate of $85 per month. The trial by jury in the superior court resulted in a verdict for the plaintiff for the above amount plus accrued interest; and a motion by the defendant, on the usual grounds, for a new trial was denied. The case is now before us on exceptions taken by the defendant to that denial, to the refusal of the trial justice to direct a verdict for the defendant, to his refusal to give any of a series of instructions to the jury which were requested by the defendant, to the giving of certain instructions to the jury and to many rulings on the admission of evidence.

The lease covered the entire second floor of a building on North Main street in the city of Providence for the term of two years beginning July 1, 1934, and the annual rental was $2040 in monthly payments of $85, payable in advance, which the defendant covenanted to pay accordingly. Among

the stipulations agreed to by the parties in the lease were the following: "If the leased premises be damaged by fire, or other casualty, they shall be promptly repaired by the lessor, and an abatement shall be made from the rent corresponding with the time during which and the extent to which they may not be used by the lessee after damage occurring as aforesaid, and before repair . . . . In the event of a partial destruction of the said premises such as to render them unsuitable for the business of the lessee, then in its option this lease shall cease and come to an end, and the lessee shall be liable for the rent only up to the time of such partial destruction of the leased premises."

The defendant went into occupation of the premises under the lease at the beginning of the term and used them in its business of selling dry groceries and canned goods until Sunday, February 3, 1935, when the premises were so badly damaged by fire that they became entirely untenantable. This was one of three branch stores maintained by the defendant in New England, the other two being in Worcester and Hartford. The defendant also maintained many branches in other parts of the country and its main offices were in the city of New York. A Mr. White was its sales manager for the New England stores and lived in Worcester, visiting the Providence branch about twice a week. A Mr. Johnson was his superior, being superintendent over the same branches. A Mr. Abernathy was the manager of the Providence branch.

The day of the fire Mr. White, having been notified of it by telephone, came down from Worcester and examined the premises. He also then talked about it over the telephone with Mr. Johnson, whom he located in New York. The next morning, when the main offices of the defendant were open in New York, he talked from Worcester over the telephone with a Mr. Hill, one of his superiors at the main offices, about the fire. He later on the same day came to Providence again; and he and Mr. Abernathy called to see

Joseph Marcus, one of the plaintiffs, in a building owned by the latter across North Main street from the leased premises.

They talked with him about getting other premises, where the defendant's business in Providence could be carried on without serious interruption. He took them to a store owned by a Mr. Charren at 165 North Main street, a little south of the leased premises and on the same side of the street. The space available there was about half that of the leased premises; but White and Abernathy said that it would answer the purpose. Marcus then hired it for that purpose and paid Charren $40 for one month's rent for it, and later paid a second month's rent of the same amount. So far as the evidence shows, nothing was said, then or later, as to whether or not the defendant was to reimburse Marcus.

Besides the evidence of the facts above stated, the only evidence which is relied on as throwing light on the question whether there was an agreement between Marcus for the plaintiffs and White for the defendant that the defendant should continue to pay rent under the lease, while the leased premises were being made tenantable, was the testimony of White that he made no arrangements with Marcus as to the payment of the rent for the Charren store and had not the slightest idea who was to pay it, and the following from the testimony of Marcus, with reference to White: Q. "What was said about what he would do about the lease?" A. "He would stay there until the old premises is put in shape, where the fire was; and he is going to stay there." Q. "Stay there until the old premises were put in shape?" A. "Yes." Q. "What would he do after that?" A. "Go back in the place where they were before." Q. "That is what Mr. White said?" A. "Yes, sir."

When the Charren store was hired, the defendant promptly removed its property from the leased premises and went into occupation of that store, at 165 North Main street, and continued to occupy it until the 8th of the next month, when it removed all its property there to another store, on Charles street in Providence. It never afterwards had anything to

do with either of the stores which it had successively occupied on North Main street.

Meantime, by a letter dated February 23, 1935, and received in due course by the plaintiffs, the defendant, through its legal department, stated to them, in substance, that, a short time before, the leased premises had been destroyed by fire; that one of the provisions of the lease "stipulates that in the event of partial or total destruction of the demised premises by fire or other casualty the lease is abrogated"; and that therefore the lessee terminated and abrogated the lease and would not pay rent for the premises nor be bound by the lease in any way.

The defendant had paid in advance the installment of rent, under the lease, for the month of February, but did not thereafter pay any rent. The plaintiffs, in answer to the above letter, promptly notified the defendant in writing that they intended to hold it liable on the lease. In a letter of March 8, 1935, the defendant inclosed to the plaintiffs the keys to the leased premises and to the store at 165 North Main street. They refused to accept the keys as a surrender of the lease and notified the defendant to that effect and that they would hold it as tenant and demanded the March rent. Not having received it, they began the present action two days later.

It was agreed between the parties, at the trial in the superior court, that the leased premises were not in such a state of repair as to be suitable for the business of the lessee during any part of the month of March, 1935. The defendant contends that the fact thus agreed upon brought into operation the stipulation first-above quoted from the lease, to the effect that in case of damage by fire to the leased premises, "they shall be promptly repaired by the lessor and an abatement shall be made from the rent corresponding with the time during which and the extent to which they may not be used by the lessee after damage occurring as aforesaid and before repair." The defendant contends further that under this stipulation the resulting abatement of the rent

payable under the lease was total from February 3, 1935, at least during the rest of that month and through the next calendar month; and that therefore the plaintiffs cannot maintain this action, which is solely to recover rent for the month of March, 1935, under the lease.

This was one of the grounds upon which the defendant rested its motion that a verdict be directed in its favor. Another principal ground for that motion was that the leased premises were so far destroyed by the fire that they were rendered "unsuitable for the business of the lessee", which was admitted to be true; that therefore, under the second of the two stipulations above quoted from the lease, the lessee had the option to terminate the lease, so that it would not be liable for rent after the time of such partial destruction; and that it exercised that option and so was not liable in this action.

As to this latter ground, the opposing contention of the plaintiffs was that the defendant's right of option was waived by the defendant by the alleged agreement testified to by Joseph Marcus, as above stated, as having been entered into by White on behalf of the defendant on one side and Joseph Marcus in behalf of the plaintiffs on the other side, and by which the defendant was to move into the store at 165 North Main street and remain there until the leased premises were repaired and then go back to them. The replies made by the defendant to this contention were two; that even if such an agreement was made, it was not binding on the defendant, because there was no evidence from which the jury could find that White had authority from the defendant to make it or that the defendant had ratified it; and that even if such an agreement was made and was binding on the defendant, it did not constitute a waiver of its option to terminate the lease.

This latter ground for the defendant's motion for the direction of a verdict in its favor, that of the exercise by it of its option to terminate the lease, is still insisted upon by the defendant. But in our judgment the former ground,

based on the lease stipulation for abatement of rent in case of damage by fire, was so clearly established and so clearly required the direction of a verdict for the defendant, that we shall not render an unnecessary decision on the latter ground.

As to the former ground, it is clear, from the language of the former of the two stipulations above quoted, that as soon as the fire rendered the leased premises untenantable, as it is admitted it did on February 3, the defendant became entitled to an abatement of all rent that would otherwise accrue under the lease, until the premises should be so repaired by the plaintiffs as again to be usable by the defendant for its business. It is agreed that the premises remained out of repair and unusable by the defendant until after the end of the next calendar month, and that therefore no rent accrued for that month, unless the defendant's right to such abatement of rent was waived by what occurred between the parties with regard to the store at 165 North Main street, as the plaintiffs contend that it was.

In so contending, they rely on the testimony above stated, that White and Abernathy, on the day after the fire, came to Joseph Marcus and asked him to assist them in finding another store in which the business of the defendant could be continued until the leased premises were repaired; that when he showed them the other store, they accepted it for the purpose and let him pay the first month's rent and later pay the next month's rent to the owner; that the defendant went into the occupation of the store and continued to occupy it for over a month; and that White agreed in substance that the defendant would continue to occupy it until the leased premises were again suitable for its occupancy and would then return to them.

There was no evidence that there was any express agreement by any one in behalf of the defendant that it would continue to pay the rent for the leased premises while occupying the other store; and we cannot see how any such agree-

ment could reasonably be inferred from the evidence, especially in view of the facts, testified to by Joseph Marcus himself and above mentioned, that the space in the store at 165 North Main street was only about half that of the leased premises and that the rent was less than half as much.

The defendant may well have become bound to repay to Joseph Marcus or to both the plaintiffs, as the case might be, the two months' rent paid for that store, but, if so, that rent would be recoverable from the defendant in an action of debt or assumpsit under the new agreement. We cannot see how it could be recovered in an action on the lease under seal. Nor can we see how, under the admitted or clearly proved circumstances, the plaintiffs can recover, in this action *on the lease,* any part of the rent which would have been payable, under the lease, for the use of the premises during the month of March, if they had not been damaged, but which, by reason of the established facts, was abated under the relevant stipulation of the lease. It is our conclusion that the trial justice clearly erred in refusing to grant, on this ground, the defendant's motion for the direction of a verdict.

The defendant's twelfth exception, being to the refusal of the trial justice to direct the jury to return a verdict in favor of the defendant, is sustained. This renders unnecessary a decision on any other exception.

On July 11, 1938, the plaintiffs may show cause, if any they have, why the case should not be remitted to the superior court with direction to enter a judgment for the defendant.

*McGovern & Slattery,* for plaintiffs.

*Kingsley L. Bennett,* for defendant.